IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17-cr-20025-SHM-dkv |
| v. | ) | |
| | ) | |
| REGINALD MONROE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## ORDER

Before the Court is the Magistrate Judge's Report and Recommendation (the "Report"), dated November 30, 2017. (ECF No. 62.) The Report recommends that Defendant Reginald Monroe's Motion to Suppress (ECF No. 26) be granted. (Id. at 329.) On December 21, 2017, the government filed timely objections to the Report and requested a *de novo* hearing. (ECF No. 66.) Monroe responded on January 4, 2018. (ECF No. 67.)

For the reasons stated below, the government's objections are OVERRULED and the Report is ADOPTED, the government's request for *de novo* hearing is DENIED, and Monroe's Motion to Suppress is GRANTED.

## I.  Background

This matter arises from the August 17, 2016 arrest of
Monroe, who fled after he had been stopped for a window tint
violation.  Detective Josh Myers ("Detective Myers") and
Detective DeWayne Smith ("Detective Smith") of the Memphis
Police Department ("MPD") performed the traffic stop.

The same day, Detective Markus Stephens ("Detective
Stephens") prepared the Incident Report and Affidavit of
Complaint for Monroe's stop and ensuing flight.  The Incident
Report, prepared by Detective Stephens, states in relevant
part:

> On 08/17/2016 at 1440 hours, Detectives Myers and
> Smith were in the area of Watkins and McNeil at which
> time Detective Myers observed a red colored Honda
> Accord traveling northbound Watkins near Lexington
> circle with its windows darker than the legal limits.
> The vehicle was then stopped at 1230 N. Watkins at
> [that] time the driver, the later identified Reginald
> More, jumped out and ran from the vehicle south bound
> towards N. Lexington circle.  Detectives Myers and
> Smith then chased Monroe ordering him to stop
> running, Monroe continued running.  Detectives chased
> Monroe to the rear of 1404 N. Lexington circle where
> [Monroe] damaged a wooden fence.  Monroe then jumped
> into an embankment and into flowing water.  Detective
> Gooch who was in the area and joined the pursuit and
> later captured Monroe in the ditch along with
> Detective Myers.  Due to the large rocks in the
> ditch, the fire department was called to make sure no
> one was injured during the foot pursuit.  Unit 28
> made the scene and checked the detectives as well as
> Reginald Monroe.  Detective Smith returned back to
> the vehicle and during his inventory, recovered in
> the trunk a pink shoe box containing several plastic
> baggies of a green leafy substance resembling

marijuana, also a pill bottle with several white
crystal rocks resembling crack cocaine. The
marijuana tested positive for THC weighing 123.5
grams and the crack cocaine tested positive weighing
11.1 grams. Also in the pill bottle was [0].5 grams
of a white powder substance which tested positive for
cocaine. The drugs recovered were tagged in the
property and evidence room. Detective Smith located
a gray and black hand gun in the trunk which was
loaded with 12 rounds. Once the Detectives made it
from the ditch Detective Gooch recovered $326.00 from
the pocket of Reginald Monroe as possible drug
proceeds. Detectives confirmed that Reginald Monroe
is a convicted Felon verified by Detective Hillard,
conviction date 10/21/1995 in Division 3 for
Possession of a controlled substance with intent to
MDS, serving 2 years. Lt. Fair made the scene and
verified the currency. Detective Smith tagged
currency and the drugs. Reginald Monroe refused to
complete a rights waiver form that was tagged along
with the property. B&C towed the vehicle to the city
lot with a hold for OCU. Monroe was transported to
the Regional Medical center for observation by
Detective Myers and Smith.

(Incident Rep., Ex. 15.)

The Affidavit of Complaint, signed by Detective Myers,

mirrors the Incident Report, adding that the "Window tint

measures at 45%." (Aff. Compl., Ex. 3.)

On January 26, 2017, a grand jury indicted Monroe for

possession with intent to distribute marijuana, possession with

intent to distribute cocaine, possession of a firearm in

relation to a drug trafficking crime, and possession of a

firearm as a convicted felon in violation of 18 U.S.C.

§ 922(g). (Indictment, ECF No. 1.)

On April 5, 2017, more than seven months after Monroe's arrest, Detective Myers supplemented the Incident Report to correct the window tint test to 41%. (Suppl. Incident Rep., Ex. 4.)

On June 28, 2017, Monroe filed a Motion to Suppress evidence obtained by the MPD during the August 17, 2016 traffic stop. (Def.'s Mot. Suppress, ECF No. 26.) The government responded on July 12, 2017. (ECF No. 32.)

United States Magistrate Judge Diane K. Vescovo held an evidentiary hearing on August 25, 2017. (Min. Entry, ECF No. 43.) The government called three witnesses: Detectives Myers, Smith, and Darnell Gooch ("Detective Gooch"). (Id.) Monroe testified and called six witnesses. (Id.) Monroe called MPD Officers Louis Brownlee and Darnell Banks, and Detectives Stephens and Myers. (Id.) Monroe also called Byron Cook, operations manager at Swivels Auto Sale, and Michael Pryor, an investigator with the federal public defenders' office. (Hr'g Tr., ECF No. 45 at 197:11-12, 249:11-12).

At the hearing, Detective Myers testified that he stopped Monroe for an apparent window tint violation and that Detective Myers smelled marijuana on approaching the vehicle. (Id. at 16:20-21.) Detective Myers testified that he and Detective Smith approached Monroe's vehicle. (Id. at 94:19.) Detective

4

Myers stood on the driver's side and Detective Smith stood on the passenger side. (Id. at 94:16-21.) Detective Myers testified that he asked Monroe about the marijuana odor and whether Detective Myers could search the vehicle. (Id. at 94:16-95:2.) Detective Myers testified that Monroe consented to the search of the vehicle. (Id. at 94:23-95:2.)

Detective Myers testified that Monroe "was removed from the vehicle," patted down, and told to stand at the back of the vehicle. (Id. at 95:3-9.) According to Detective Myers, Detective Smith stood at the rear of the vehicle with Monroe, while Detective Myers searched the interior. (Id. at 95:21-25.) Detective Myers testified that the odor of marijuana became stronger towards the rear of the vehicle. (Id. at 96:1-2.) Detective Myers searched the backseat, where he opened a compartment behind an armrest that led to the truck. (Id. at 96:7-11, 120:18-121:17.) In that compartment, he testified, he found a pink shoebox. (Id.) Detective Myers testified that, when he opened the shoebox containing drugs, Monroe fled. (Id. at 96:10-11, 120:18-121:17.)

Detective Smith testified that he also smelled marijuana as he approached the vehicle. (Id. at 154:21-23, 165:24-25.) On direct examination, Detective Smith testified that Detective Myers received Monroe's consent to search the vehicle. (Id. at

156:25-77:5.)  On cross examination, Detective Smith testified
that he could not hear whether Detective Myers asked for or
obtained Monroe's consent.  (Id. at 168:15-169:6.)  Detective
Smith testified that Detective Myers began searching the
vehicle.  (Id. at 155:6-7.)  Detective Smith did not testify
that he saw Detective Myers access the backseat, open a
backseat armrest compartment, or pull out a pink shoebox.
Detective Smith testified that, while Detective Myers searched
the vehicle, Detective Smith spoke with Monroe at the rear of
the vehicle.  (Id. at 155:8-24.)  Detective Smith testified
that at some point, while he was looking away, he heard Monroe
flee.  (Id. at 155:8-24.)  Detective Smith gave chase.  (Id. at
156:1.)

Detective Smith testified that he returned to the scene of
the traffic stop after Monroe had fled and began "inventorying"
the trunk of Monroe's vehicle.  (Id. at 157:8-13.)  Detective
Smith did not remember whether the trunk was open when he
returned or whether he opened the trunk.  (Id. at 171:3-94:5.)
Detective Smith testified that Monroe's vehicle was then sent
to the impound lot.  (Id. at 179:4-14)

Monroe testified that the officers did not mention
smelling marijuana and did not ask Monroe to consent to a
search.  (Id. at 258:5-12.)  According to Monroe, Detective

Myers began searching the vehicle without consent and, while in the front seat, opened the trunk where the contraband was stowed. (Id. at 259:13-20.) Monroe concedes that he fled once the trunk had been opened. (Id.)

At the end of the evidentiary hearing, the Magistrate Judge permitted the parties to file supplemental briefs addressing whether Monroe had consented to the search. (Id. at 269:21-22.) Monroe filed his supplemental brief on September 25, 2017. (ECF No. 52.) The government filed its supplemental brief on October 14, 2017. (ECF No. 55.)

On November 30, 2017, the Magistrate Judge filed her Report. (ECF No. 62.) She found the officers' testimony incredible and concluded that Monroe's Fourth Amendment rights had been violated. (Id.)

On December 21, 2017, the government filed its objections to the Report and requested a de novo hearing. (ECF No. 66.) The government objects to the Magistrate Judge's credibility determinations, four of her findings of fact, and six of her conclusions of law. (Id.) The government argues that the evidence should not be suppressed because Monroe consented to the search, the detectives had reasonable suspicion to search, and the detectives recovered the contraband during an inventory

search.  (Id.)  On January 4, 2018, Monroe filed a response.
(ECF No. 67.)

## II.  Jurisdiction & Standard of Review

A district court has the authority to "designate a
magistrate judge to conduct hearings, including evidentiary
hearings, and to submit to a judge of the court proposed
findings of fact and recommendations for the disposition, by a
judge of the court, of any motion."  28 U.S.C. § 636(b)(1)(B).

The district court has appellate jurisdiction over any
decisions the magistrate judge issues pursuant to such a
referral.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a).
"[U]pon proper objection by a party, a district court must
review de novo a magistrate judge's ruling on a motion to
suppress."  United States v. Quinney, 238 F. App'x 150, 152
(6th Cir. 2007) (citing 28 U.S.C. § 636(b)(1)); United States
v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001)).

The Court need not review -- under a de novo or any other
standard -- those aspects of a report and recommendation to
which no objection is made.  Thomas v. Arn, 474 U.S. 140, 150-
52 (1985).  Objections to any part of a Magistrate Judge's
disposition "must be clear enough to enable the district court
to discern those issues that are dispositive and contentious."
Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995); see also

Arn, 474 U.S. at 147 (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute."). A general, frivolous, or conclusory objection will be treated as if no objection had been made. Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991); see also Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986) ("[T]he district court need not provide de novo review where the objections are '[f]rivolous, conclusive or general.'").

## III. Analysis

The government objects to the Magistrate Judge's credibility determinations, four findings of fact, and six conclusions of law. (ECF No. 66.)

### A. Objections to Credibility Determinations

The government objects to the Magistrate Judge's determination that Detectives Myers and Smith's testimony was incredible. The Magistrate Judge found incredible the officers' testimony that they smelled marijuana before conducting their search, that Monroe consented to a search of his vehicle, and that they found the contraband in a compartment leading to the trunk.

"When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues." United States v. Johnson, No. 10-20176, 2011 WL 3844194 at *2 (W.D. Tenn. Aug. 30, 2011) (citing United States v. Raddatz, 447 U.S. 667, 675-76 (1980)) (citations omitted). "When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears." Id. (citing United States v. Robinson, No. 1:07-CR-01, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007)) (citations omitted). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." Id. (citations omitted).

A magistrate judge's credibility determinations are afforded deference unless it appears the findings are clearly erroneous or irreconcilably inconsistent with the established record. See Raddatz, 447 U.S. at 676, 684 ("[I]n providing for

'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed finding and recommendations."); United States v. Freeman, 412 F. App'x 735, 743 (6th Cir. 2010) ("Because the magistrate judge was in the best position to evaluate [the officer's] credibility, . . . and because the record provides 'no compelling reason to second-guess the magistrate judge's decision,' . . . the credibility determination must stand." (internal citations omitted)).

The government has not met its burden.  The government argues that the inconsistencies the Report cites are points of clarification.  Whether an opposing recollection is considered an inconsistency or clarification requires evidence that no written record can reveal -- the demeanor of the witness.  A written transcript of a hearing does not "convey the evidence fully in some of its most important elements. . . .  It cannot give the look or manner of the witness: his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration[.]"  Raddatz, 447 U.S. at 679 (quoting Queen v. Bertrand, 16 Eng. Rep. 391, 399 (1867)).  The Magistrate Judge was in the best position to evaluate the offiers' credibility.  Her determination that

their testimony was inconsistent is not at odds with the record.

The Affidavit of Complaint, Incident Report, and Supplement do not corroborate the officers' testimony that they smelled marijuana in and around Monroe's vehicle, spoke with Monroe prior to his fleeing, told Monroe they smelled marijuana, obtained Monroe's consent to search the vehicle, opened a compartment in the backseat leading to the trunk, and discovered a shoebox. The documents describe a starkly different series of events:

> Detective Myers and Smith were in the area of Watkins and McNeil at which time Detective Myers observed a red colored Honda Accord traveling northbound Watkins near Lexington circle with its windows darker than the legal limits. The vehicle was then stopped at 1230 N. Watkins at the time the driver, the later identified Reginald Monroe, <u>jumped out and ran from the vehicle</u> . . . . Detective Smith returned back to the vehicle and <u>during his inventory, recovered in the trunk a pink shoe box</u> . . . .

(Aff'd of Compl., Ex. 3 (emphasis added).) The Affidavit of Complaint and Incident Report suggest that, on being pulled over by the officers, Monroe "jumped out [of] and ran from the vehicle" and that the contraband was found during an "inventory" search after Monroe had been detained.

According to the officers' testimony, they stopped Monroe, spoke calmly with him, had Monroe stand outside and behind the

12

vehicle while Detective Myers conducted a search, and observed

Monroe run after discovery of the "pink shoe box."

Detective Myers supplemented the Incident Report. That

Supplement, made more than seven months after the incident,

corrected the window tint measurement. (Suppl. Incident Rep.,

Ex. 4.) The record does not show that the officers

supplemented any report to include facts about speaking with

Monroe before his flight, receiving consent to search, smelling

marijuana, or discovering the compartment in the backseat.

The government's response to the Motion to Suppress

represents that the officers smelled marijuana and found the

shoebox through the backset compartment. The response does not

represent that the officers told Monroe they smelled marijuana

or that they obtained Monroe's consent to search the vehicle.

(See ECF No. 32.)

At the suppression hearing, Detective Smith made

conflicting statements about whether Monroe had given consent

to search. Detective Smith testified on direct examination

that Detective Myers asked for and obtained Monroe's consent to

search the vehicle:

> A: And Detective Myers asked him – asked Mr. Monroe
> if [he] could take a look in the vehicle and he
> agreed to a search of the vehicle and he stepped out

and I had -- I had him come back to the rear of the
vehicle while Detective Myers searched the vehicle.

(Hr'g Tr., ECF No. 45 at 154:25 – 155:1-5.)  On cross

examination, Detective Smith testified he did not know whether

Detective Myers had asked for and received consent from Monroe

because Detective Smith was out of earshot:

> Q: Okay.  And you don't know whether or not Mr.
> Monroe told Officer Myers he could search the car or
> not because you didn't hear it, right?
>
> A: Right.

(Hr'g Tr., ECF No. 45 at 170:3-6.)

Monroe's testimony at the hearing directly contradicted

the officers' testimony about whether they told Monroe they

could smell marijuana, obtained Monroe's consent to search, and

accessed the trunk through the backseat compartment.

The Magistrate Judge's credibility determinations were

based on first-hand observation of the officers as they

testified at the hearing.  The Magistrate Judge's credibility

determinations are not clearly erroneous or irreconcilably

inconsistent with the established record.  The Magistrate

Judge's credibility determinations are ADOPTED.

**B. Objections to Facts**

The government objects to four of the Magistrate Judge's findings of fact and her credibility determination as to particular facts.

First, the government objects to the Magistrate Judge's finding that Detective Myers had trouble recalling which direction the cars were traveling and the street where the traffic stop occurred. (ECF No. 66 at 357.) That fact is not material to the Magistrate Judge's conclusion that Monroe's Fourth Amendment rights were violated. The government's objection to that fact is OVERRULED.

Second, the government objects to the Magistrate Judge's finding that Detective Myers conceded he had reviewed the Affidavit of Complaint on cross examination rather than on direct examination. (ECF No. 66 at 357.) The Magistrate Judge found that, "[a]lthough Detective Myers initially testified that he never reviewed the documents Officer Stephens prepared, after being shown the Affidavit of Complaint, (Ex. 3), on cross examination, he conceded that he had reviewed the Affidavit of Complaint and sworn to its truthfulness in front of Judicial Commissioner Rhonda W. Harris." The government argues that Detective Myers "testified more cautiously regarding the Affidavit of Complaint" on direct examination by stating he

"d[id]n't believe [he] did" review the Affidavit of Complaint.
(ECF No. 66 at 357-58.)  The government contends that, "[a]fter
the Affidavit of Complaint was shown to Detective Myers, he
testified that he did indeed sign and review the Affidavit of
Complaint." (Id. at 358.)  The Magistrate Judge did not err.
She correctly found that on direct examination Detective Myers
testified from his memory that he had not reviewed the
Affidavit of Complaint.  The government's objection to that
fact is OVERRULED.

Third, the government objects to the Magistrate Judge's
statement that Detective Smith's testimony "corroborated the
testimony of Detective Myers for the most part but with several
noteworthy differences." (Id. at 358.)  The Magistrate Judge
determined that the officers' testimony diverged on the matter
of consent. (ECF No. 62 at 350.)  She found that, although
Detective Myers testified that Monroe gave consent, Detective
Smith testified that he did not know whether Monroe gave
consent. (Id. at 337.)  The Magistrate Judge did not err in
finding that the officers' testimony was not fully
corroborative.  The government's objection to that fact is
OVERRULED.

Fourth, the government objects to the Magistrate Judge's
finding that defense witness Byron Cook testified that,

generally, in vehicles like Monroe's, the backseat compartment latch is locked and a key must be used to open it. (Id. at 359.) On cross examination, the government asked Cook whether he knew how the backseat compartment worked. Cook testified that "[i]t looks like you have to put a key in it. It has a keyhole, and you pull it." (Hr'g Tr., ECF No. 45 at 207:20-21.) Although Cook was uncertain whether he had opened the compartment in Monroe's vehicle, he testified that he had "a lot full" and "specialize[s] in Hondas and Toyotas . . . so [he] just about knows how it works[.]" (Id. at 207:24-208:3.)

Whether such compartments generally lock and require a key was not material to the Magistrate Judge's conclusion. She concluded that Cook's testimony "indicat[ed] that the latched compartment leading to the trunk of Monroe's vehicle could have been locked," which called into question whether the compartment was locked or unlocked when Detective Myers conducted the search. (ECF No. 62 at 338 (emphasis added).) The government's objection to that fact is OVERRULED.

The government also objects to the Magistrate Judge's finding that Detective Myers's testimony that he did not smell marijuana behind Monroe's vehicle was undermined by his comment that raw marijuana has a potent odor that can be detected while driving past. (ECF No. 66 at 357.) The government does not

17

dispute the accuracy of those facts, but disputes their use by the Magistrate Judge to determine the officers' credibility. As discussed above, the Magistrate Judge's credibility determinations are ADOPTED. The government's objection is OVERRULED.

The government's objections to the Magistrate Judge's findings of fact and credibility determinations as to particular facts are OVERRULED. The Report's findings are ADOPTED.

### C. Objections to Law

The government makes six objections to the Magistrate Judge's conclusions of law.

First, the government objects to the Magistrate Judge's finding that "'[t]he government did not respond to Monroe's argument that he did not consent, other than classifying consent as a highly relevant fact [] not included in the incident report narrative.'" (ECF No. 66 at 360-61 (quoting ECF No. 62 at 340).) The government objects to the Magistrate Judge's summary of the parties' legal arguments. On review of the record, the government's brief appears to address Monroe's lack-of-consent argument by responding that the officers testified under oath that Monroe did consent. Whether the

government addressed consent in its brief is not material to the Magistrate Judge's conclusion that Monroe's Fourth Amendment rights were violated. The government's objection to the Magistrate Judge's characterization of the government's brief is OVERRULED.

Second, the government objects to the Magistrate Judge's conclusion that it was "suspicious that neither officer carried a tint meter with him when they approached Monroe's vehicle for a tint violation," without clarifying why that fact seemed suspicious. (Id. at 361.) Whether a fact is suspicious hinges on credibility. As discussed above, the Magistrate Judge's credibility determinations are adopted. The objection is OVERRULED.

Third, the government objects to the Magistrate Judge's reliance on United States v. Martinez, 356 F. Supp. 2d 856 (M.D. Tenn. 2005), in determining the officers' credibility. (Id. at 361.) The Magistrate Judge's credibility determinations have been adopted. The objection is OVERRULED.

Fourth, the government objects to the Magistrate Judge's "conclusion that the government did not prove by a preponderance of evidence that the circumstances surrounding the traffic stop justified a warrantless search." (Id. at 362.) The government points to "all the arguments contained in

its response to the motion to suppress that the search of the defendant's vehicle was valid after the offers smelled the odor of marijuana emanating from the defendant's vehicle." (Id.) "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). The government's general objection and repetition of arguments considered by the Magistrate Judge may be disregarded. See Miller, 50 F.3d at 380.

If not disregarded, the government's general objection is unpersuasive. The Magistrate Judge found incredible the officers' testimony about whether they smelled marijuana before conducting a search of Monroe's vehicle and whether they received consent to search. Nothing in the record supports the officers' testimony on those matters. Because the Magistrate Judge's credibility determinations are adopted, the officers' testimony is given little or no weight. The government has failed to establish by a preponderance of the evidence that the officers had reasonable suspicion or consent to search Monroe's vehicle.

Fifth, the government objects to the Magistrate Judge's conclusion that "the search of the defendant's vehicle was not justifiable as an inventory search." (ECF No. 66 at 362.) "[I]nventory searches are . . . a well-defined exception to the warrant requirement of the Fourth Amendment." Colorado v. Bertine, 479 U.S. 367, 371 (1987). Such searches "may only be conducted if police have 'lawfully tak[en] custody of a vehicle.'" United States v. Smith, 510 F.3d 641, 651 (6th Cir. 2007) (quoting United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998)). An inventory search of a vehicle must be conducted "according to standard police procedures" and may not be undertaken "for purposes of investigation." Lumpkin, 159 F.3d at 987. "[O]fficers are required to follow 'standardized criteria . . . or established routine' to assure that inventory searches are not 'a ruse for a general rummaging in order to discover incriminating evidence.'" United States v. Hockenberry, 730 F.3d 645, 659 (6th Cir. 2013) (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)). It is the government's burden to show by a preponderance of the evidence that the inventory exception applies. See, e.g., United States v. Torbert, 207 F. Supp. 3d 808, 818 (S.D. Ohio 2016); United States v. Richards, 147 F. Supp. 2d 786, 788-89 (E.D. Mich. 2001).

The government has not shown by a preponderance of the evidence that the officers were following "standard police procedures" or an "applicable policy." Under the MPD Policy and Procedures, a vehicle can be towed subsequent to an arrest for evidentiary purposes or at the defendant's request. (MPD Policy and Proc., Tow-In Policy, Ex. 12.) If for evidentiary purposes, the vehicle must be towed "to the City Impound Lot where the vehicle will be checked in at the office . . . [and] escorted to the Crime Scene Investigation building at the rear of the City Impound lot in order to ensure the integrity of the evidence contained in the vehicle." (Id. at 4.) The government cites no evidence that the officers followed the MPD Policy and Procedures. The Magistrate Judge correctly concluded that the inventory exception did not apply to the search of Monroe's vehicle. The objection is OVERRULED.

Sixth, the government objects to the Magistrate Judge's "conclusion that the government failed to prove that the defendant had given consent to search his vehicle." (ECF No. 66 at 362.) A search conducted pursuant to valid consent is a well-recognized exception to the general warrant requirement of the Fourth Amendment. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 228 (1973). The government must prove consent by a preponderance of the evidence. See United States v. Beauchamp,

659 F.3d 560, 571 (6th Cir. 2011). The Magistrate Judge determined that the officers' testimony that Monroe gave consent lacked credibility. No other evidence established that Monroe gave consent. The Magistrate Judge correctly concluded that the government had failed to prove by a preponderance of the evidence that Monroe gave his consent to search the vehicle. The government's objection is OVERRULED.

For the foregoing reasons, the government's objections to the Magistrate Judge's conclusion of law are OVERRULED. The Report's conclusions of law are ADOPTED.

### D. Request for *De Novo* Hearing

The government seeks a *de novo* hearing so it can bring forward evidence it failed to bring before the Magistrate Judge. Because the Court adopts the Report's findings of fact and conclusion of law, a *de novo* hearing is unnecessary. The government's request for a *de novo* hearing is DENIED.

### IV. Conclusion

For the foregoing reasons, the government's objections are OVERRULED and the Report is ADOPTED. The government's request for *de novo* hearing is DENIED. Monroe's Motion to Suppress is GRANTED.

So ordered this 1st day of May, 2018.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE